IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM V. STESNEY, | : | |
| | : | |
| Plaintiff, | : | No. 07-CV-183 |
| | : | |
| v. | : | |
| | : | |
| NORTHUMBERLAND COUNTY BOARD OF COMMISSIONERS, | : | Judge John E. Jones III |
| | : | |
| Defendant. | : | |

## MEMORANDUM

## September 19, 2008

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Pending before this Court is a Motion for Summary Judgment (the "Motion") filed by Northumberland County Board of Commissioners ("the Board" or "Defendant") on July 31, 2008. (Rec. Doc. 30). For the reasons that follow, the Motion will be denied.

## PROCEDURAL HISTORY

On January 30, 2007, William V. Stesney ("Stesney" or "Plaintiff") commenced the above captioned action by filing a complaint (Rec. Doc. 1) against the Board. On July 31, 2008, the Board filed the instant Motion. (Rec. Doc. 30). Having been fully briefed by the parties, it is now ripe for our disposition. (See

1

Rec. Docs. 31-35).

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d

Cir. 1990).  The party moving for summary judgment bears the burden of showing

"there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir.

1992).  Summary judgment should not be granted when there is a disagreement

about the facts or the proper inferences that a fact finder could draw from them.

See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has the burden of demonstrating the absence of a

genuine issue of material fact.  See Celotex Corporation v. Catrett, 477 U.S. 317,

323 (1986).  This may be met by the moving party pointing out to the court that

there is an absence of evidence to support an essential element as to which the

non-moving party will bear the burden of proof at trial.  See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported,

the non-moving party must then show by affidavits, pleadings, depositions,

answers to interrogatories, and admissions on file, that there is a genuine issue for

trial.  See Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented

that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**STATEMENT OF MATERIAL FACTS:**

As required by the aforesaid standard of review, our factual recitation herein is based upon our viewing of the evidence, and drawing of all inferences, in the light most favorable to the non-moving parties, the Plaintiff.

Plaintiff was appointed to the position of Chief Clerk for the Board on January 1, 1996. (Pl.'s Dep. 10). On August, 18, 2003, he was informed via a letter from the Director of Human Resources, Edward S. Zack, that because of Northumberland County's financial condition and budgetary constraints,[1] he was being laid off effective August 19, 2003. (Pl.'s Mem. Opp. Sum. J., Ex. A). On the day his employment was terminated, the Plaintiff was 64 years of age. (Pl.'s Dep. 28). Subsequent to the dismissal of the Plaintiff, the position of Chief Clerk was

---

[1] John Boback served as the Chairman of the Northumberland County Board of Commissioners from June 23, 2003 until the end of that year. (Boback Dep. 7). At the beginning of his tenure, Boback alleges that multiple meetings were convened to discuss the growing budgetary deficit facing the county. (Id. at 14-15). According to Boback, Stesny was present at these meetings and failed to correct the mistaken belief that the county was $4 million in debt, when in fact Stesny knew that the debt was in the neighborhood of $9 million. (See id.). Boback asserts that in order to ameliorate the debt, the commissioners had planned on eliminating 17 people in the county administrative building, one of which was the Assistant Chief Clerk. (Id. at 16). However, given Stesny's silence regarding the extent of the county's debt, Boback avers that the commissioners lost confidence in Stesny and therefore decided to terminate him instead of William Tharp, the Assistant Chief Clerk. (Id. at17). Boback contends that the lay-off letter of August 18, 2003 did not mention the lost confidence because the commissioners wanted to avoid damaging Stesny's name, therefore jeopardizing future job opportunities that he might pursue, and wanted to protect any benefits to which he would be entitled. (Id. at 21-22).

4

occupied by William Tharp,[2] who was in his 30s at the time, between

approximately August 22, 2003 and September 9, 2003; Steve Roush, age 55,

between September 10, 2003 and December 29, 2003; and Michael I. Lindermuth,

age 37, during all relevant times thereafter. (Pl.'s Mem. Opp., Ex. C, 5-6).[3]

## DISCUSSION:

The Plaintiff asserts that his dismissal from the position of Chief Clerk of

Northumberland County violated the Age Discrimination in Employment Act of

1967 ("ADEA"), 29 U.S.C. §§ 621 et seq. and the Pennsylvania Human Relations

Act ("PHRA"), 43 Pa. C.S. §§ 951 et seq. However, the instant Motion focuses

exclusively on the ADEA claim. Therefore, it will be the focus of the present

discussion.

The ADEA prohibits an employer from "discriminating against any

individual with respect to his compensation, terms conditions, or privileges of

employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where a

---

[2] We note that Boback informed Tharp that his duties as Chief Clerk would likely be temporary, as the new Board of Commissioners, which was recently elected and served a new political majority, would likely fill the Chief Clerk position with someone from their own party, as was customary. (Id. at 23-24; See Pl.'s Dep. 15-17).

[3] We note that Lindermuth was appointed by a new Board of Commissioners, who took office subsequent to their election in November 2003. (See Pl.'s Dep. 15-17). As noted, the majority party in Northumberland County politics had by that time shifted, and, as was customary, the new majority party had the power to appoint the County Clerk. (Id. at 18).

plaintiff does not have direct evidence of age discrimination, as is presently the case, a three step burden-shifting approach is employed under <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).

The first step requires that the Plaintiff produce evidence from which a prima facie case of age discrimination can be inferred.  The prima facie case requires proof that (I) the plaintiff was 40 years of age or older; (ii) the plaintiff suffered an adverse employment action (i.e. the plaintiff's employment was terminated); (iii) the plaintiff was qualified for the job; and (iv) that the plaintiff was replaced by a sufficiently younger person. <u>See Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997) (internal citations omitted).  The second step requires that the Defendant "produce evidence that is sufficient to support a finding that it had a legitimate, nondiscriminatory reason for the discharge." <u>Id.</u>  If the Defendant cannot carry its burden of production, judgment must be entered for the plaintiff. <u>Id.</u>  If the Defendant carries its burden of production, the court proceeds to the third step, which requires the Plaintiff to produce evidence from which "a fact finder could reasonably either (I) disbelieve the employer's articulated legitimate reasons; or (ii) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Id.</u>

With regard to the first prong of the McDonnell Douglas Test, the Defendant does not challenge that Plaintiff was over 40 years of age at the time of the discharge, that Plaintiff was qualified for the job, or that Plaintiff suffered an adverse employment action. The Defendant does, however, assert that the Plaintiff cannot maintain a prima facie case of age discrimination because his position was not filled with a person who was *sufficiently* younger than he. (Def.'s Br. Supp. 6). Defendant notes that Plaintiff was originally replaced by William Tharp, who was in his 30s at the time he ascended to the Chief Clerks position. Subsequent to Tharp's dismissal, the 55 year old Steve Roush was placed in that position until the new Board of Commissioners appointed the 37 year old Michael I. Lindermuth to the position. Inexplicably, Defendant proceeds to argue that Plaintiff was not replaced by a sufficiently younger person because Roush was only nine years younger than Plaintiff at the time of Plaintiff's discharge. This supposition misconstrues the series of events that occurred. Plaintiff was replaced by Tharp, who was replaced by Roush, who was ultimately replaced by Lindermuth. Thus, most literally, Plaintiff *was* replaced by someone sufficiently younger than he, as his immediate replacement was nearly half his age. Thus, we believe that Plaintiff has sustained his burden in proving a prima facie case of age discrimination. This triggers our analysis of the second prong of the McDonnell

7

Douglas Test.

It is the Defendant's contention that the dismissal of Stesny had nothing to do with his age and everything to do with the budget crisis in Northumberland County. The letter of dismissal reads to this effect. (Pl.'s Br. Opp. Ex. A) (stating that the discharge was "based upon the County's current financial condition and budgetary constraints"). The deposition testimony of John Boback corroborates this assertion. (Boback Dep. 16-17) (stating that eliminating a position in the Clerk's Office was part of an economic revival plan, and that Stesny was ultimately chosen as a budgetary casualty because of the aforementioned lack of confidence the commissioners had in him). We believe that this evidence is more than sufficient to carry Defendant's burden of providing us with a legitimate nondiscriminatory reason for Stesny's discharge. Therefore, we believe that the second prong of the McDonnell Douglas Test has been met.

With regard to the third prong of the McDonnell Douglas Test, the Plaintiff has failed to provide us with evidence from which a reasonable person could infer that the budgetary crisis served as a pretext for dismissing him as Chief Clerk, and that age was actually the motivating or determinative factor in his discharge. To this end, Plaintiff puts forth a number of arguments. First, he avers that the Defendant has not provided any financial information demonstrating how the

8

Plaintiff's dismissal would provide financial savings to Northumberland County.

Second, Plaintiff argues that since the Defendant never explored other ways to

save money on the Plaintiff's salary (i.e. reducing the salary), the Defendant's

motive for discharging him could not have genuinely been saving money.  Third,

Stesny posits that the inconsistent answers[4] provided in response to his

interrogatories gives credence to the proposition that age was a motivating or

determinative factor in his dismissal.  Fourth, the Plaintiff asserts that an inference

of age discrimination can be made from the fact that William Tharp, a man in his

30s, was intended as his permanent replacement but was ultimately dismissed and

temporarily replaced by the 55 year old Steve Roush, who was permanently

replaced by the 37 year old Michael Lindermuth.[5]  We will address these

contentions in turn.

   First, we note that the Plaintiff's argument regarding the Defendant's failure

to adduce evidence indicating Plaintiff's dismissal produced monetary savings

---

[4] Plaintiff claims that when asked to identify people holding the position of Chief Clerk subsequent to his dismissal, the Defendant initially responded with one name, Michael Lindermuth, age 37. (Pl.'s Br. Opp. Ex. B).  The answer was then amended to indentify Steve Roush, age 55. (Pl.'s Br. Opp. Ex. C).  At the deposition of John Boback, it was revealed that William Tharp, who was in his 30s, was actually Stesny's immediate successor. (Boback Dep. 17).

[5] Essentially, Stesny avers that since his immediate and ultimate replacements were significantly younger than he, a reasonable person could infer that his age played a determinative role in his dismissal.

ignores the burden shifting scheme adopted by the <u>McDonnell Douglas</u> Court.

With regard to the third prong of the <u>McDonnell Douglas</u> Test, the Plaintiff bears

the burden of producing evidence from which a reasonable person could infer that

age was a motivating or determinative factor in his dismissal.  Thus, it was

*Plaintiff's burden* to produce evidence that his dismissal failed to provide the

monetary amelioration supposed by Northumberland County; it was not

*Defendant's burden* to produce evidence that the dismissal succeeded in achieving

monetary relief.  The Plaintiff has failed to identify any such evidence, most likely

because none exists.  After all, it is axiomatic that eliminating an individual from

the payroll aides in alleviating the financial expenditures of an employer.[6]

Likewise, we find Stesny's second argument unavailing.  Plaintiff contends

that Defendant harbored discriminatory motives merely because the Defendant

never considered alternative ways to save money on Plaintiff's salary.  However,

we believe that the failure to consider reducing Plaintiff's salary in lieu of

terminating his employment is in no way inconsistent with the proposition that

discriminatory intent was not the basis of the termination.  Indeed, terminating

Stesny's employment illustrates the dire financial straights in which Defendant

---

[6] Moreover, Stesny has left substantially intact Defendant's assertion that his silence served to misrepresent the County's debt by a wide margin and mislead the commissioners.  That this ended up costing him his job is understandable and hardly surprising.

found itself. Defendant believed that it needed to implement aggressive cost cutting procedures to save capital. Discharging Stesny, instead of reducing his salary, certainly is consistent with this proposition. There is utterly nothing in the record that would cause a reasonable person to conclude that the budgetary concerns were a pretext for discharging Stesny, and that age was a motivating or determinative factor in his dismissal.

With respect to Plaintiff's third contention, we find that Defendant's inconsistent answers in response to Plaintiff's interrogatories are insufficient in establishing that Defendant harbored a discriminatory motive. Indeed, the Third Circuit Court of Appeals has held that inconsistent explanations regarding termination of employment are not, in themselves, sufficient evidence from which to infer a discriminatory intent. Williams v. Dover Downs, Inc., 2008 WL 2879795 (3d Cir. 2008). Certainly, inconsistent answers regarding the motivation behind a former employee's termination provide more compelling evidence of discriminatory intent than do inconsistent answers regarding the people who ultimately filled the position vacated by the former employee. Since the Dover Court did not find the former sufficient in proving a discriminatory intent, we

decline to find the latter insufficient in the same regard.[7]

Regarding Plaintiff's fourth contention, we find that the sequence of his successors provides no basis for the inference of a discriminatory intent. Under McDonnell Douglas, such a showing is necessary to establish Plaintiff's prima facie case. But, after the Defendant has successfully rebutted the prima facie case by presenting a legitimate, nondiscriminatory motive for the dismissal, the Plaintiff bears the burden of adducing evidence from which a reasonable fact finder could either (I) disbelieve the employer's articulated legitimate reasons;[8] or (ii) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[9] Keller, 130 F.3d

---

[7] Additionally, we note that if Defendant was genuinely motivated by a discriminatory intent and was attempting to conceal this attempt through factual misrepresentations, Defendant likely would have revealed that Steve Roush held the Chief Clerk position because he, at age 55, would corroborate Defendant's claim that age was not a motivating factor in Stesny's dismissal. Yet, Roush is one of the omitted names which Plaintiff claims provides support for his theory of discriminatory intent.

[8] In interpreting this language, the Third Circuit Court of Appeals has said, "[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer . . . . Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

[9] Pursuant to this language, a plaintiff "must point to evidence that proves age discrimination in the same way that critical facts are generally proved-based solely on the natural probative force of the evidence." Keller, 130 F.3d at 1111.

at 1108. The sequence of Plaintiff's successors to the position of Chief Clerk satisfy neither segment of the third prong of the <u>McDonnell Douglas</u> Test for the reasons that follow.

The sequence of successors does not in anyway cast doubt upon Defendant's contention that Stesny's dismissal was motivated by a budget crisis. It certainly does not rebut this proffered reason by the Defendant for dismissing Plaintiff. Therefore, it cannot pass muster under the first segment of the third prong of the <u>McDonnell Douglas</u> Test. Likewise, in light of all the evidence, the sequence is not of such probative significance that it could lead a reasonable fact finder to infer discriminatory intent.[10] Therefore, we do not believe that the Plaintiff has satisfied his burden of producing evidence from which a reasonable fact finder could conclude that Defendant's legitimate, nondiscriminatory reason for Plaintiff's discharge was a pretext that concealed a discriminatory intent. Therefore, we believe that the Plaintiff has not carried his

---

[10] We note that it is the Defendant's contention that Stesny would have been retained in spite of the budget crisis had he not betrayed the confidence of the board of commissioners. When he did, he was, as previously noted, replaced by the Assistant Chief Clerk, William Tharp, who was in his 30s but was a logical replacement since he was familiar with office protocols. Thereafter and as stated, after Tharp was dismissed, he was replaced by Steve Roush, age 55, who was ultimately replaced by the 37 year old Michael Lindermuth. Plaintiff readily admits that this sequence forms the *only* basis for his allegation of age discrimination. He concedes that there are no conversations, correspondences, witness testimony, or any other type of evidence that illustrates that age was ever mentioned in any of the conversations that led to Plaintiff's discharge. (Pl.'s Dep. 30-31).

burden of identifying genuine issues of material fact such that he would be entitled to relief under the ADEA.

In closing, we note that, as previously stated, paragraph 10 of the Complaint (Rec. Doc. 1) contains a claim based on the PHRA. This claim was not addressed in the Defendant's Brief in Support of the instant Motion (Rec. Doc. 31), nor is it in the Plaintiff's Brief in Opposition (Rec. Doc. 34), nor in Defendant's Reply Brief (Rec. Doc. 35). In as much as the PHRA is a pendant state claim, our dismissal of the Plaintiff's federal ADEA claim prompts us to decline to exercise subject matter jurisdiction over the state PHRA claim.[11]

An appropriate order will enter.

---

[11] To be sure, our analysis of the ADEA claim may be dispositive of the PHRA claim; however, because it was not briefed by either party, we cannot make that determination.

14